**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FILED
MAR 23 2020
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| THOMAS F. MCCOY | ) | |
| Pro Se Petitioner, | ) | |
| | ) | Criminal Case No. 2:03-cr-197-RAJ-6 |
| v. | ) | Civil Case No. 2:16-cv-384 |
| | ) | Cir. No. 17-6004 |
| | ) | Clemency Case No. [ C184251 ] |
| UNITED STATES OF AMERICA | ) | |
| Respondent. | ) | |

MOTION DENIED.
Entered this 23rd day of March 2020

Raymond A. Jackson
United States District Judge

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RE: **MOTION FOR THE COURT TO UNDERTAKE JUDICIAL NOTICE REGARDING
PROPOSED RECONSIDERATION OF JUDGEMENT.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOW COMES Thomas F. McCoy (herein after "Petitioner"), proceeding **pro se**, humbly moves this Honorable Court to undertake Judicial Notice and reconsider the current judgement in this case. Wherein, a reduction of sentence is warranted by extraordinary and compelling reasons. Specifically the injustice of facing a term of incarceration two hundred (216) months longer than Congress now deems warranted for a "second or subsequent count of conviction" under section 924(c). The Petitioner herein asks the Honorable Judge Raymond Jackson to respond to this unique opportunity to reduce his sentence from the current three hundred (300) months for count 48, to the congressionally intended eighty-four (84) months. The FIRST STEP Act Section 603(B), now allows Federal Courts to directly reduce sentences under the statutory provisions of Title 18 U.S.C. 3582(c)(1)(A).

### INTRODUCTION

The Petitioner was 19 years of age when arrested October 3, 2003, and indicted for this current conviction and sentence. A first-time offender, and sentenced in Criminal History Category I. On March 24, 2004, Petitioner was convicted, in relevant part, of count Nine for eighty-four (84) months and count

Forty-Eight for (300 months), both charging a "stacked" penalty of three hundred and eight-four (384) months for the use of a firearm during and in relation to a crime of violence in violation of Title 18 U.S.C. Section 924(c)(1)(A) & (c)(1)(C). [See Exhibit E-3 – Statement of Reasons]

Moreover, The FIRST STEP Act (P.L. 115-391) signed into law by the President on December 21, 2018, among many other things, amended Title 18 U.S.C. Section 924(c)(1)(C). In Section 403 of the Act, Congress amended Section 924(c)(1)(C) so a consecutive term of 25 years or three hundred (300) months for a second or subsequent conviction for possession of a firearm during a crime of violence is no longer mandated if the crime was committed before a prior conviction under the subsection was final. This was so because in Deal v. United States, 508 U.S. 129 (1993), the Supreme Court held that, even when multiple counts under section 924(c) were in the same indictment, the conviction on the first count did not have to be final before the mandatory increases and stacking provisions were triggered. This amendment would have benefited the Petitioner if it had been in effect at the time of his sentencing. Section 403 of the First Step Act also provides: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for this offense has not been imposed as of the date of enactment." limiting this Court, with no authority to apply Section 403 of the First Step Act to reduce the Petitioner's sentence retroactively (citing United States v. Urkevich, (No.8:03CR37), 2019 WL 6037391 (D. Neb. Nov. 14, 2019))See United States vs. Maumau, 08-cr-00758 (D. Utah Feb. 18 2020); Cantu-Rivera, 1:05-CR-458-1, 2019 WL 2498923 at *2 (S.D. Tex. June 17, 2019); Brown 4:05-CR-00227-1, 2019 WL 4942051 at *3 (S.D. Iowa Oct. 8, 2019);.

While most young men would be crushed under the weight of serving a 35-year sentence, the Petitioner was different. Instead of acting out in violence, drug abuse or approaching prison with a "what is the point" attitude, the Petitioner struggled emotionally in the beginning of this sentence in the Federal Bureau of Prisons ("BOP") but as he matured and applied himself, available prison records reflect an extraordinary record of rehabilitation. That record includes a sterling prison conduct, 3 discipline infractions (non violent or drug related), constant employment and a member of the suicide watch cadre for a period of time. Thus, to promote respect for standing law, this Petition for Compassionate Release from a (300 month) sentence for count Forty-Eight is now deemed harsh and unwarranted by Congress be modified to a correct (84 months).

### Brief History

Petitioner was born January 9, 1984 at Virginia Beach General Hospital to Thomas and Cassandra McCoy Jr. It was his grandparents Thomas and Undine McCoy Senior that get the credit for raising me. They took custody of him at the age of 7 including Petitioner's older sister due to my parent's substantial drug addiction. Thomas Sr. (my grandfather) was an amazing man; he spent quality time with him and took him every where including his occupation of residential electrical work. He would also take the young Petitioner with him to visit his friends. He was the Petitioner's idol! Unfortunately, he got very sick while he was young. Once he lost his health, Petitioner's little world changed drastically. At that point, he was no longer seeing the State provided therapist while not having his parents began affecting him emotionally. There were a few things he taught the young Petitioner and expected from me before dementia caused him to completely lose memory of who he was. The Petitoner remember sitting on his grandfather's lap and hearing him explain how much he loved him and needed him to take care of his grandfather's wife and family because he was sick. He asked the young Petitioner could I handle that, and he said "yes Sir," It's almost laughable looking back at that moment, (being an 11 year old child) believing it was his responsibility to take care of a grown woman and a family.

The Petitioner was committed to taking care of his grandfather (washing, grooming, dressing, caring, etc....) throughout attending Kempsville Middle and Tallwood High School. Eventually his sister Christy McCoy became a single mother of an amazing little boy, being this little boy's Uncle gave him a chance to be the parent figure he always wanted. He did the best he could, keeping his grades above average, playing multiple sports, and maintaining a job to assist with the bills. This was his lifestyle until he went to college at Saint Augustine University in Raleigh, North Carolina. The Petitioner remembers calling home repeatedly while away at college and hearing his grandmother speak of outstanding bills while having to care for my grandfather. His sister also struggled raising his nephew, feeling guilty and obligated after going away to school but not being able to help them. That is when the Petitioner made the first of an episode of terrible decisions, in which he is still paying for to this very day.

Many years ago he apologized to his family for his actions and disappointment. They all forgave him in seconds, but it wasn't that easy to forgive him. I did consider the advice of a peer back then which got me into this situation, but the Petitioner says; in his heart he knew my actions were wrong. The psychological burden carried, being ashamed and hurt by the decisions of his parents which prevented them from being in his life was almost unexplainable. The Irony is now; the Petitioner has nephews and a niece whom are in college, graduating high school, and experiencing this ambiguous world as he has damaged them just the same. These past one hundred and ninety-seven (197) months in prison have been humbling for the Petitioner. His Mentor and close friend, Mr. William R. Brown once told him many years ago, *"Thomas, I know you deserve another chance, but before we can convince someone else of this, you have to believe this yourself..."* This was another parable to the Petitioner at the time, but he knew it meant he needed to begin investing in a future. This investment began in 2008 as you will be able to see in his "Education History" and payments toward my restitution order. Please review the Exhibits included for records.

## JURISDICTION

### I. THIS COURT HAS AUTHORITY TO RESENTENCE PETITIONER UNDER SECTION 3582(C)(1)(a)(i) FOR THE EXTRAORDINARY AND COMPELLING REASONS PRESENTED HEREIN.

With changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of the BOP to resentence prisoners to time served under 18 U.S.C. Section 3582(c)(1)(A)(i) for "extraordinary and compelling reasons," and the reasons that can justify resentencing need not involved only medical, elderly, or family circumstances.

**A** When Congress originally enacted Section 3582 in 1984, it intended for district courts to reduce sentences for prisoners on the basis of extraordinary and compelling reasons not limited to medical, family, or elderly circumstances.

Congress first enacted the modern form of the compassionate release statute contained in 18 U.S.C. Section 3582 as part of the Comprehensive Crime Control Act of 1984. Section 3582(c) states that a district court can modify even a final "term of "imprisonment" in four situations, the broadest of which is directly relevant here. A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. Section 3582(c)(1)(A)(i). In 1984, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons.

Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under Section 3582(c). But the legislative history gives an indication of how Congress

thought the statute should be employed by federal courts. One of the Congress's initial goals in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing systems." S.Rep No. 98-225, at 52, 53 n.74 (1983). Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stressed how some individual cases may still warrant a second look at resentencing:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and in some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.

Id. At 55, 56 (emphasis added). Rather than having the Parole Commission review every federal sentence focused only on the offender's rehabilitation, Congress decided that Section 3582(c) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment." Id. At 56. Congress intended for the situations listed in Section 3582(c) to act as "safety valves for modification of sentences, "Id. At 121, that enabled sentence reductions when justified by various factors that previously could have been addressed through the (now abolished) parole system. This particular safety valve would "assure the availability of specific review and reduction to a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." Id. noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather that with a federal parole board, the statute permitted "later review of sentences in particularly compelling situations." Id. (emphasis added).

Congress thus intended to give federal sentencing courts an equitable power that would be employed on an individualized basis to correct fundamentally unfair sentences. And there is no indication that Congress limited the safety of Section 3582(c)(1)(A) to medical or elderly release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep No. 98-225, at 55, 56.

**B**     The U.S. Sentencing Commission concluded that Section 3582(c)(1)(A)'s extraordinary and compelling reasons" for compassionate release are not limited to medical, elderly, or family circumstances. Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). Congress provided only one limitation to that delegation of authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. Section 994(t) (emphasis added). Congress no doubt limited the ability of rehabilitation alone to constitute extraordinary circumstances so that sentencing courts could not use it as a full and direct substitute for the abolished parole system. Congress, however, contemplated that rehabilitation could be considered with other extraordinary and compelling reasons sufficient to resentence people in individual cases. Indeed, the use of the modifier "alone" signifies just the opposite: that rehabilitation could be used in tandem with other factors to justify a reduction. The Commission initially neglected its duty, leaving the BOP to fill the void and create the standards for extraordinary and compelling reasons warranting resentencing under Section 3582(c)(1)(A).

**2**     The Commission finally acted in 2007, promulgating a policy that extraordinary and compelling reasons includes medical conditions, age, family circumstances, and "other reasons." U.S.S.G. Section 1B1.13, application note 1(A). After a negative DOJ Inspector General report found that the BOP had rarely moved courts for a Section 3582(c)(1)(A) modification even for prisoners who met the objective criteria, see U.S. Dept. of Justice Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program (Apr. 2013) ("FBOP Compassionate Release Program"), the Commission amended ins policy statement, expanding the guidance to courts on qualifying conditions

and admonishing the BOP to file motions for compassionate release whenever a prisoner was found to meet the objective criteria in U.S.S.G. Section 1B1.13. Id. At application note 4: see also United States v. Dimasi, 220 F. Supp. 3d 173, 175 (D. Mass. 2016) (discussing the progression from the OIG report to new "encouraging" guidelines). BOP promulgated policies governing compassionate release. The latest version prior to passage of the First Step Act was Program Statement.49, Compassionate Release/Reduction in Sentence (Mar. 25, 2015).

The Commission created several categories of qualifying reasons: (A) "Medical Conditions of the Defendant, "including terminal illness and other serious conditions and impairments; (B) "Age of the Defendant," for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment; (C) "Family Circumstances," where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver; and (D) "Other reasons," when the Director of the BOP determines there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id., application note 1(A). The Commission also clarified that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing or order to warrant a reduction in the term of imprisonment." U.S.S.G. Section 1B1.13, application note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." Id.

Consistent with the text and legislative history of Section 3582(c), the Commission concluded that reasons beyond medical, age, and family circumstances could qualify as "extraordinary or compelling reasons" for resentencing, and that the extraordinary or compelling reasons needs not be based on changed circumstances occurring after the initial sentencing of the defendant.

C       Through the First Step Act, Congress changed the process for compassionate release based on criticism of BOP's inadequate use of its authority, returning to the federal judiciary the authority to act on its own to reduce sentences for "extraordinary and compelling reasons." Prior to Congress passing the First Step Act, the process for compassionate release under Section 3582(c)(1)(A) as follows: the U.S. Sentencing Commission set the criteria for resentencing relief under Section 3582(c), and the only way a sentencing court could reduce a sentence was if the BOP Director initiated and filed a motion in the sentencing court. See PL.98 473 (HJ Res 648), PL. 98 473, Stat 1837 (Oct. 12, 1984). If such a motion was filed, the sentencing court could then decide where "the reduction was justified by 'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission." Id. So even if a federal prisoner qualified under the Commission's definition of extraordinary and compelling reasons, without the BOP Director's filling a motion, the sentencing court had no authority to reduce the sentence, and the prisoner was unable to secure a sentence reduction. This process meant that, practically, the BOP Director both initiated the process and set the criteria for whatever federal prisoner's circumstances the Director decided to move upon.

3       The Department of Justice has recognized that, prior to the passage of the First Step Act, BOP (and the omission) functionally had final say on what constituted an "extraordinary and compelling reason": for sentence reduction, because only BOP could bring a motion under the terms of Section 3582(c)(1)(A). See Dept. of Justice, Letter to U.S. Sentencing Commission Chairman Hinojosa (July 14, 2007) (noting that because Congress gave BOP the power to control which particular cases will be brought to a court's attention, "it would be senseless [for the Commission] to issue policy statements allowing the court to grant such motions on a broader basis than the responsible agency will seek them"). Leaving the BOP Director with ultimate authority for triggering and setting the criteria for sentence reductions under Section 3582(c)(1)(A) created several problems. The Office of the Inspector General found that the BOP failed: to provide adequate guidance to staff on the criteria for compassionate release, to set time lines for reviewing compassionate release requests, to create formal procedures for informing prisoners about compassionate release, and to generate a system for tracking

compassionate release requests. See FBOP Compassionate Release Program, at I IV. As a result of these problems, the OIG concluded that "BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." ID.; see generally Stephen R. Sady & Lynn Deffebach, Second look Resentencing Under 18 U.S.C. Section 3582(c) as an Example of Bureau of Prisons Policies That Result in Over incarceration, 21 FD. Sent RPTR. 167 (Feb. 2009).

Congress heard those complaints. In late 2018, Congress passed the First Step Act, part of which transformed the process for compassionate release under Section 3582(c)(1)(A). See P.L. 115-391, 132 Stat. 5194, at Section 603 (Dec. 21, 2018). Section 603 of the First Step Act changed the process by which Section 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now resentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. Section 3582(c)(1)(A). Once the defendant who has properly exhausted Administrative Remedy files a motion a court may, after considering the 18 U.S.C. Section 3553(a) factors, resentence a defendant, if the court finds that extraordinary and compelling reasons warrant a reduction. Id. Any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." Id. The effect of these new changes is to allow federal judges the ability to move on a prisoner's compassionate release application even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner.

Congress made these changes in an effort to expand the use of compassionate release sentence reductions under Section 3582(c)(1)(A). Congress labeled these changes, "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018) (emphasis added). Senator Cardin noted in the record that the First Step Act made several reforms to the federal prison system, including that "[t]he bill expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199, at S7774 (Dec. 18, 2018) (emphasis added). In the House, Representative Nadler noted that First Step included "a number of very positive changes, such as ... improving application of compassionate release, and providing other measures to improve the welfare of Federal inmates." 164 Cong. Rec. H10346-04, 164 Cong. Rec. H10346-04, H10362 (Dec. 20, 2018) (emphasis added).

**D**     Statutory text defines judicial sentence reduction authority around "extraordinary and compelling reasons," and the policy statements of the U.S. Sentencing Commission under Section 1B1.13 do not preclude this Court from resentencing McCoy.

Once a prisoner has properly pursued administrative remedies and filed a motion for compassionate release, a federal court possesses authority to reduce a sentence if and whenever the court finds "extraordinary and compelling reasons warrant such a reduction." A court must consider the 18 U.S.C. Section 3553(a) sentencing factors in reducing any sentence, and any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. Section 3582(c)(1)(A).

As noted above, the Sentencing Commission created a catch-all provision for compassionate release under U.S.S.G. Section 1B1.13, application note (1)(D), which states: "Other Reasons." As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The Commission also stated the process by which compassionate release reductions should be decided:

Motion by the Director of the Bureau of Prisons. A reduction under this policy statement may b granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. Section 3582(c)(1)(A). U.S.S.G. Section 1B1.13, application note 4. The dependence on BOP in these policy statements is a relic of the prior procedure that s now inconsistent with the First Step Act's amendment of Section 3582(c)(1)(A). Application note 1(D) can no longer limit judicial authority to cases with an initial determination by the BOP Director that a prisoner's case presents extraordinary or compelling reasons for a reduction, because the First Step Act has expressed allows courts to consider and grant sentence reductions even in the face of an adverse or unresolved BOP determination concerning whether a prisoner's case is extraordinary or compelling. See 18 U.S.C. Section 3582(c)(1)(A), as amended by P.L. 115-391 Section 503 (Dec. 21, 2018). And the commission's now-dated statement indicating that the BOP must file a motion in order for a court to consider a compassionate release sentence reduction no longer controls in the face of the new statutory text enacted explicitly to allow a court to consider a reduction even in the absence of a BOP motion. ID. with the First Step Act, Congress decided that federal judges are no longer constrained or controlled by how the BOP Director sets its criteria for what constitutes extraordinary and compelling reasons for a sentence reduction. Consequently, those sections of the application notes requiring a BOP determination or notion are not binding on courts. See Stinson v. United States, 508 U.S. 36, 38 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.") Put differently, now that the First step Act has recast the procedural requirements for a sentence reduction, even if a court finds there exists an extraordinary and compelling reason for a sentence reduction without the BOP Director's initial determination, then the sentence reduction is not inconsistent "with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. Section 3582(c)(1)(A).

As relevant here, the FIRST STEP ACT Section 603, Congress amended Section 3582(c)(1)(A) to permit defendants to move a sentencing court for modification of sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Moreover, all Federal District Courts have original jurisdiction over "all civil actions arising under the constitution, laws, or treaties of the United States." Title 28 U.S.C. Section 1331.

Key provision of the First Step Act Section 603B allows Federal Courts to reduce sentences under the compassionate release statutory provision of Title 18 U.S.C. 3582(c)(1)(A)(i) for 'extraordinary and compelling' reasons without needing a motion from the Bureau of Prisons. Title 28 U.S.C. 994(t), the Sentencing Commission was directed to define "the criteria to be applied and a list of specific extraordinary and compelling examples." The Commission defined four examples, one medical, one due to age, one due to family circumstances, and one catch-all, that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivision (A) through (C)."

## SUMMARY OF FACTS

### I. Conviction and Sentence

On March 24, 2004, Petitioner was convicted of Counts Nine and Forty-Eight of the Indictment, both charging him with use of a firearm during a "crime of violence," in violation of 18 U.S.C. Section 924(c)(1)(A). Counts Nine and Forty-Eight alleged that the underlying "crime of violence" for the Section 924(c) charge was interference with commerce by robbery, in violation of 18 U.S.C. Section 1951 (Hobbs act robbery), as set forth in Counts Eight and Forty-Seven, for which he was also convicted.

On July 20, 2004, this Court sentenced Petitioner to a term of thirty-seven (37) months imprisonment, concurrent, on Counts 8 and 47, plus eighty-four (84) months imprisonment on Count 9, and three hundred (300) months imprisonment on Count 48, to be served consecutively to Count Eight. Petitioner did not file a direct appeal. [See Exhibit E-1 – Judgement in a Criminal Case]

### II. Section 2255 Motion(s) & Appeal(s)

A. On November 26, 2007, Petitioner filed a Section 2255 motion Case No.2:07-cv-556, which the Court dismissed as untimely on February 29, 2008. On April 28, 2008, Petitioner appealed this Court's dismissal of his Motion, to the Fourth Circuit. On September 15, 2008, the Fourth Circuit dismissed that appeal Case No. 98-6802.
B. On November 18, 2011, Petitioner filed a motion Case No.2:11-cv-00626, which the Court constituted as a second Section 2255 Motion. On May 22, 2012, the Court dismissed Petitioner's motion because he failed to obtain the requisite order from the court Circuit authorizing him to file a second or successive section 2255 motion. The Court did not address the merits of Petitioner's motion, which was dismissed without prejudice to his right to move the Fourth Circuit for leave to file a successive section 2255 motion.
C. On June 22, 2015, Petitioner filed a third section 2255 Motion Case No.2:15-cv-270, which was transferred to this Court from the United States District Court for the Central District of California, Western Division. On August 5, 2015, Petitioner filed a Motion to Amend. On August 28, 2016, the Court denied the motion.
D. On June 27, 2016, Petitioner filed a section 2255 motion Case No.2:16-cv-00384. On October 31, 2016 it was dismissed.
E. On December 29, 2016, Petitioner filed a notice of Appeal Case No.17-6004. On January 23, 2020 it was dismissed.

### I. EXTRAORDINARY AND COMPELLING FRAMEWORD WARRANTING RELIEF CLARIFICATION OF SECTION 924(C) OF TITLE 18, UNITED STATES CODE

On December 18th, 2018 the United States Senate voted 87-12 in favor of the First Step Act. On December 20th, 2018, The House followed suit and in overwhelming fashion voted 358-36 in favor of this bill. And finally, on December 21st, 2018 at 1 pm ET, President Donald J. Trump signed this bill into law.

Within this legislative package was an amendment to address and ultimately correct what has long been known as 924(c) "stacking".

Section 403 of the First Step Act is entitled: Clarification of Section 924(c) of Title 18, UNITED STATES CODE, and This section in pertinence reads;

(A) IN GENERAL – Section 924(c)(1)(C) of Title 18, United States Code is amended, in the matter of preceding clause (i), by striking "second or subsequent conviction under

this subsection" and inserting "violation of this subsection that occurs after a prior conviction under this subsection has become final."

For decades there has been much to debate over whether Congress intended for 924(c) offenders to be subjected to enhance recidivist penalties for multiple 924(c) offenses that stemmed from the same indictment.

Via the First Step Act, congress has now clarified what 924(c)(1)(C) was *always* meant to be. More definitively, congress has clarified what the 924(c)(1)(C) was *never* meant to be.

Congress deliberately used the word "<u>Clarification</u>" to correct this broken application of 924(c). Clarification is defined as: To make clear or easier to understand. Clarification is required only when something has been interpreted outside of its intended context.

### REASON(S)

Petitioner has properly exhausted his claim for a reduction of sentence under the compassionate release statute. Petitioner filed a request for a reduction of sentence under the compassionate release statute with the warden of Federal Correctional Institution Ashland in Ashland Kentucky on February 4th, 2020. The request was speedily denied by the Warden and after a lapse of 30 days from the date the Warden, the Petitioner submits this motion for this Honorable Court to undertake judicial notice regarding proposed reconsideration for judgement. [SEE Exhibit E-10]

I. **Petitioner is Sentenced 216 Months OVER What Congress Now Deems Warranted -Due to Abrogated Rule of Law.**

On July 20, 2004, this Court sentenced Petitioner to a now abrogated rule of law, while expressing "little discretion" on the length of sentence, stating "Congress decided what the punishment is." Congress now deems a sentence two hundred (216) months over the intended sentence unjust. [See Exhibit E-2 – Sentencing Transcripts]

This clarification was not made retroactive despite the injustice of the Petitioner serving a sentence two hundred and sixteen (216) months longer for then Congress now deems warranted for a 924(c)(1)(C) conviction. On July 20, 2004, this Court sentenced the Petitioner while expressing "little discretion" on the length of sentence and then stated "Congress decided what the punishment is." [See Exhibit E-2 – Sentencing Transcripts] Before the Act, a second or subsequent count of conviction under section 924(c)(1)(C) triggered a higher mandatory minimum penalty of (300 months), as well as mandatory "stacking" of these sentences for the count of conviction. This was so because in <u>Deal v. United States</u>, 508 U.S. 129 (1993), the Supreme Court held that, even when multiple counts under section 924(c) were in the same indictment, the conviction on the first count did not have to be final before the mandatory increases and stacking provisions were triggered. Thus, to promote respect for standing law, This Petition for Compassionate Release from a three hundred (300) month sentence for count Forty-Eight is now deemed harsh and unwarranted by Congress be modified to a correct eighty-four (84) months.

II. **Petitioner is a First Time Offender with Low Risk of Recidivism**

Petitioner is classified 'Low Risk' for recidivism based of the First Step Act's risk assessment tool ("PATTERN"). Despite a Low Risk, he is considered ineligible for the earned good time signed into law under the First Step Act. Petitioner is a first time offender with a total of 3 incident reports, no incidents involving drugs or violence sense incarceration.

III. **Petitioner has fulfilled Judicial Recommendation and Extraordinary Rehabilitation & Programing**

    A. Petitioner was recommended by this Court to continue his education, get a college degree and use his time of incarceration to acquire a trade. [See Exhibit E-2 – Sentencing Transcripts]

        i. Petitioner has completed an Associate of Applied Science in Business Management with Honors; [See Exhibits E-4; E-6;and E-7]
        ii. Petitioner has also completed an Associates of Arts in Social and Behavioral Sciences; and currently in a Bachelors Program in Business Administration; [See Exhibits E-4; E-6;and E-7]
        iii. Petitioner is currently in a Youth Mentor Program at FCI Ashland, for inmates who were incarcerated under the age of 21 years of age at sentencing; [See Exhibits E-4; and E-9]
        iv. Petitioner is currently in the Office Manager Apprenticeship Program in Unicor; [See Exhibit E-4]
        v. He has also developed a Mentoring Program of his own titled ("True Father Figures"), where he is mentoring inmates here at FCI Ashland and planning to have a blog created; and [See Exhibits E-4; and E-9]
        vi. He consistently completes the qualifying courses and programs accredited by the Act despite not qualifying for the earned good time (Total of 62 courses). [See Exhibits E-4]

IV. **Petitioner's record of Restitution Payments is Extraordinary**

    A. On July 20, 2004, this Court sentenced Petitioner jointly but severely along with 6 other codefendants to Restitution Order of a total of $38,209.77. Petitioner has provided approximately 30% of entire Restitution Order. As of May 7, 2019 there was a total of $29, 430.60 collected on Account Code CONV00003905. In the last 7 months, the Petitioner has paid $ 1,375.12 in addition toward the balance owed to date. [See Exhibits E-1; and E-5]

    Petitioner's record of rehabilitation is also extraordinary. He has completed one hundred and ninety-six (196) months to date of his standing conviction and sentence. This Congressional Clarification of 924(c) would resentence him to two hundred and five (205) months if made retroactive; Thomas has completed more then 108% of the intended sentence included earned good-time. The FIRST STEP Act (P.L. 115-391) was signed into law by the President on December 21, 2018. Section 403 of the Act reduces the severity of the "stacking" of multiple Section 924(c) offenses. Before the Act, a second or subsequent count of conviction under section 924(c) (count Forty-Eight) triggered a higher mandatory minimum penalty of three hundred (300) months, a reduction in sentence is warranted here by the injustice of facing a term of incarceration two hundred and sixteen (216) months longer than Congress now deems warranted for the crimes committed.

**PROPOSED RELEASE PLAN**

    The Petitioner has a well constructed release plan which is build around the guidance of his long-time mentor Mr. William R. Brown. Upon release, the Petitioner will be living with his Grandmother

Undine G. McCoy, at 1007 Whitehurst Landing Road, Virginia 23464. He will also finish a Masters Degree Program in Business. The Petitioner will take the job as book keeper for Mr. Brown as employment. Mr. Brown has been apart of the Petitioner's life dating before incarceration and funded tuition for both college degrees and current Grad School Programing. He also looks forward to volunteering with relatives and peers in the Youth Football League, mentoring and coach the Virginia Beach Hurricanes. The Petitioner, with support of Mr. Brown is also looks to promote his own Mentoring Program and advance the McCoy family business "McCoy Electric," in respect and late memory of his grandfather.

## STANDARDS FOR REVIEW

The Petitioner herein acknowledges such pleadings as his are held to a less stringent standard than those drafted by attorneys. Therefore, documents filed **pro se** are "liberally construed" Erickson v. Ardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citations omitted).

This motion is not to relitigate old matters or raise arguments or present evidence that could have been raised prior to the entry of judgement. Exxon Shipping v. Baker, 554 U.S. 471, 485 n.5, 128 S.C. 2605 171 L. Ed. 2d 370 (2008) (quoting 11 Wright et. Al, Federal Practice and Procedure Section 2810, at 127028 (2d Ed. 1995).

## CONCLUSION

For the reason(s) stated herein, Petitioner humbly requests that this Honorable Court **GRANT** this MOTION FOR THE COURT TO UNDERTAKE JUDICIAL NTOICE REGARDING PROPOSED RECONSIDERATION OF JUDGEMENT. This Court can contact Petitioners previous Appointed Federal Defender Ms. Amanda C. Conner for case file and records.

Respectfully Submitted,

/s/ [signature]
Mr. Thomas F. McCoy – **Pro Se**
Petitioner

*************************

I hereby declare, under penalty of perjury, that the foregoing Proof of Service is true and correct to the best of my knowledge and understanding, pursuant to Title 28 U.S.C. Section 1746.

Executed and signed on this 5th day of March, 2020.

Respectfully Submitted,
/s/ [signature]
Mr. Thomas F. McCoy
Petitioner – **Pro Se**
Reg# 55535-083
FCI Ashland
P.O. Box 6001
Ashland, KY 41105