**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 20-6821**

---

UNITED STATES OF AMERICA

               Plaintiff – Appellant,

    v.

THOMAS F. MCCOY

               Defendant – Appellee.

---

Appeal from the United States District Court for the Eastern District of Virginia at Norfolk.
Raymond A. Jackson, District Judge.  (2:03-cr-00197-RAJ-6)

---

**No. 20-6869**

---

UNITED STATES OF AMERICA

               Plaintiff – Appellant,

    v.

KEITH E. BRYANT

               Defendant – Appellee.

---

Appeal from the United States District Court for the District of Maryland at Baltimore.
Catherine C. Blake, District Judge.  (1:95-cr-00202-CCB-3)

---

**No. 20-6875**

---

UNITED STATES OF AMERICA

        Plaintiff – Appellant,

    v.

CRAIG LAMONT SCOTT

        Defendant – Appellee.

---

Appeal from the United States District Court for the District of Maryland at Baltimore.
Catherine C. Blake, District Judge.  (1:95-cr-00202-CCB-2)

---

**No. 20-6877**

---

UNITED STATES OF AMERICA

        Plaintiff – Appellant,

    v.

KITTRELL BERNARD DECATOR

        Defendant – Appellee.

---

Appeal from the United States District Court for the District of Maryland at Baltimore.
Catherine C. Blake, District Judge.  (1:95-cr-00202-CCB-1)

---

Argued:  September 10, 2020            Decided:  December 2, 2020

---

Before DIAZ, THACKER, and HARRIS, Circuit Judges.

---

2

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Diaz and Judge Thacker joined.

––––––––––––––––––

**ARGUED:**   Joseph Attias, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia; Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant.   John Gleeson, DEBEVOISE & PLIMPTON LLP, New York, New York, for Appellees.   **ON BRIEF:**   G. Zachary Terwilliger, United States Attorney, Richard D. Cooke, Assistant United States Attorney, Daniel T. Young, Assistant United States Attorney, Aidan Taft Grano, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant.   Marisa Taney, Matthew Specht, Steven Tegrar, DEBEVOISE & PLIMPTON LLP, New York, New York, for Appellees. James Wyda, Federal Public Defender, Paresh Patel, Assistant Federal Public Defender, Shari Silver Derrow, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellees Craig Scott, Keith Bryant, and Kittrell Decator.

––––––––––––––––––

PAMELA HARRIS, Circuit Judge:

The defendants in these consolidated appeals were convicted of robberies and accompanying firearms violations under 18 U.S.C. § 924(c).  At the time, sentences under § 924(c) were "stacked," which exposed the defendants to additional mandatory minimums and led to sentences ranging from 35 to 53 years of imprisonment.  After the defendants' convictions became final, Congress passed the First Step Act and ended sentence "stacking" under § 924(c).  Today, the defendants' sentences would be dramatically shorter – in most cases, by 30 years – than the ones they received.

At the same time it shortened sentences under § 924(c), the First Step Act significantly expanded access to compassionate release under 18 U.S.C. § 3582(c)(1)(A). Prior versions of § 3582(c)(1)(A), which empowers courts to reduce sentences for "extraordinary and compelling reasons," had allowed review of sentences only at the request of the Bureau of Prisons ("BOP").  The First Step Act removed the BOP from that gatekeeping role, authorizing defendants themselves to file motions for sentence reductions.

Relying on both these First Step Act provisions, the defendants moved for reductions in their sentences under § 3582(c)(1)(A), resting their case for "extraordinary and compelling reasons" primarily on the length of their § 924(c) sentences and the disparity between their sentences and those that Congress deemed appropriate in the First Step Act.  After considering each defendant's individual circumstances – including their youth at the time of the offenses, their lack of significant prior criminal history, their exemplary behavior and rehabilitation in prison, and their already-substantial years of

4

incarceration – the district courts granted the defendants' motions and reduced their sentences to time served.

We now affirm the judgments of the district courts.  As the government emphasizes on appeal, § 3582(c)(1)(A) prohibits sentence reductions that are not consistent with "applicable policy statements issued by the Sentencing Commission."  But contrary to the government's argument, treating the defendants' § 924(c) sentences as an "extraordinary and compelling" reason for release is not inconsistent with any "applicable policy statement" of the Sentencing Commission for the simple reason that the Commission has yet to issue a policy statement that applies to motions filed by defendants under the recently amended § 3582(c)(1)(A).  Nor was it otherwise improper, we conclude, for the district courts to consider the First Step Act's declaration of the appropriate level of punishment under § 924(c) in assessing the defendants' cases, on an individualized basis, for compassionate release.

## I.

We begin with a brief overview of the First Step Act and the law regarding compassionate release, and turn next to the district court decisions granting the defendants' motions for sentence modifications.

### A.

The First Step Act was enacted on December 21, 2018.  Pub. L. No. 115-391, 132 Stat. 5194 (2018).  As the Second Circuit recently explained:

> The First Step Act . . . was simultaneously monumental and incremental. Monumental in that its changes to sentencing calculations, mandatory minimums . . . and other parts of our criminal laws led to the release of thousands of imprisoned people whom Congress and the Executive believed did not need to be incarcerated.  Incremental, in that, rather than mandating more lenient outcomes, it often favored giving discretion to an appropriate decisionmaker to consider leniency.

*United States v. Zullo*, 976 F.3d 228, 230 (2020).

The First Step Act made two specific changes relevant here.  First is a "[m]onumental . . . change[] to sentencing calculations," *id.*, under 18 U.S.C. § 924(c). That provision imposes mandatory minimum sentences for using or carrying a firearm in connection with a crime of violence:  for a first offense, a five- to ten-year mandatory minimum, depending on the circumstances; and for a subsequent conviction, a consecutive 25-year mandatory minimum.  Prior to the First Step Act, a conviction was treated as "second or subsequent," triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case.  *See Deal v. United States*, 508 U.S. 129, 132 (1993).  The First Step Act ended this practice, known as sentence "stacking," by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already "has become final."  § 403(a), 132 Stat. at 5222.  Under § 403 of the First Step Act, that is, the 25-year mandatory minimum is "reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution."  *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020).  But that change does not apply retroactively to sentences – like the defendants' – imposed before December 21, 2018, when the First Step Act became law.  *See* § 403(b), 132 Stat. at 5222; *Jordan*, 952 F.3d at 174.

The second relevant change is to § 3582(c)(1)(A), known as the compassionate release statute.  Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if the "court . . . finds that . . . extraordinary and compelling reasons warrant such a reduction" and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and if the § 3553(a) sentencing factors merit a reduction.  18 U.S.C. § 3582(c)(1)(A).  Importantly, prior to the First Step Act, courts could consider compassionate release only upon motion by the BOP.  *See* 18 U.S.C. § 3582(c)(1)(A) (2012).

The BOP used that power so "sparingly" that the Department of Justice's Inspector General found in a 2013 report that an average of only 24 imprisoned persons were released each year by BOP motion.  *See Zullo*, 976 F.3d at 231 (citing U.S. Dep't of Just., Office of the Inspector Gen., *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 395 (E.D. Pa. 2020).  According to the same report, the BOP poorly managed the compassionate-release process and failed to establish timeliness standards for reviewing prisoner requests, causing delays so substantial that inmates sometimes died awaiting final BOP decisions.  *See Zullo*, 976 F.3d at 231–32.

Against this backdrop, Congress amended § 3582(c)(1)(A) to "remove the Bureau of Prisons from its former role as a gatekeeper over compassionate release petitions." *McCoy v. United States*, No. 2:03-cr-197, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020).  Section 603(b) of the First Step Act announces its purpose in its title – "Increasing the Use and Transparency of Compassionate Release" – and provides that defendants now

7

may file motions for sentence modifications on their own behalf, so long as they first apply to the BOP. *See* § 603(b), 132 Stat. at 5239. By creating an avenue for defendants to seek relief directly from the courts, Congress effectuated an "incremental" change, expanding the "discretion [of the courts] to consider leniency." *Zullo*, 976 F.3d at 230.

Section 3582(c)(1)(A)(i) does not attempt to define the "extraordinary and compelling reasons" that might merit compassionate release.[1] Instead, the Sentencing Commission, pursuant to authority granted it by Congress, *see* 28 U.S.C. § 994(t); *see also id.* § 994(a)(2)(C), addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13. The Commission first issued its policy statement in 2006 and last updated it in November 2018, *before* the First Step Act. Accordingly, it is directed at BOP requests for sentence reductions: "Upon the motion of the Director of the Bureau of Prisoners," it provides, a court may reduce a sentence if, after considering the § 3553(a) sentencing factors, it determines that "extraordinary and compelling reasons warrant the reduction," that the defendant is not a danger to the community, and that the reduction is consistent with the instant policy statement. U.S.S.G. § 1B1.13.

Finally, in an application note, the Commission sets out four categories of "extraordinary and compelling reasons." The first three establish specific circumstances

---

[1] Other subsections of the compassionate release statute do specify particular circumstances that may merit sentence reductions. *See* 18 U.S.C. § 3582(c)(1)(A)(ii) (focusing on age of the defendant); *id.* § 3582(c)(2) (focusing on defendants sentenced under sentencing ranges that are subsequently lowered by the Sentencing Commission). Section 3582(c)(1)(A)(i), by contrast, uses more open-ended language to capture cases that do not fall within those provisions but meet the heightened "extraordinary and compelling" standard.

under which such reasons exist, having to do with a defendant's medical condition, health and age, and family circumstances.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(C).  Fourth, and most important to this case, is the so-called "catch-all" category, located at Application Note 1(D) and labeled "Other Reasons," which permits a sentence reduction if "there exists in the defendant's case an extraordinary and compelling reason other than" the above-listed reasons – but only "[a]s determined by the Director of the Bureau of Prisons."  *Id.* cmt. n.1(D).

## B.

### 1.

We turn now to the defendants' individual cases, beginning with *United States v. McCoy*.  Thomas McCoy was charged, in a single prosecution, with involvement in a string of twelve robberies, and pleaded guilty to two counts of Hobbs Act robbery under 18 U.S.C. § 1951 and two counts of using firearms in connection with those robberies under § 924(c).  At the time of the robberies, McCoy was 19 years old, and his only prior conviction had been for reckless driving, resulting in a $120 fine.

McCoy was sentenced in 2004, before the First Step Act eliminated sentence-stacking under § 924(c).  As a result, the court was required to impose two mandatory, consecutive sentences totaling 32 years:  seven years for the first § 924(c) conviction, and 25 years for the second.  The applicable Guidelines range for the robberies was 37 to 46 months.  The district court sentenced McCoy to the lowest possible sentence:  37 months

for the robberies and 384 months for the § 924(c) convictions, for a total of 421 months or just over 35 years.[2]

In 2020, after serving over 17 years of his sentence, McCoy submitted a request for compassionate release to the BOP, which denied the request.  Taking advantage of the recently enacted First Step Act, McCoy then filed his own motion for a sentence reduction in the district court, based primarily on the severity of his § 924(c) sentence and the First Step Act's changes to that provision.  After the district court summarily denied his pro se motion, McCoy, now represented by counsel, filed a motion for reconsideration.  The district court granted McCoy's motion for reconsideration and for compassionate release on May 26, 2020, reducing McCoy's sentence to time served.  *McCoy*, 2020 WL 2738225, at *6.

Before the district court, the government argued primarily that treating McCoy's § 924(c) sentence as an "extraordinary and compelling" reason for compassionate release would be inconsistent with Guideline § 1B1.13, and thus outside the court's authority to grant reductions "consistent with applicable policy statements issued by the Sentencing Commission."  *See* 18 U.S.C. § 3582(c)(1)(A)(i).  The length of a sentence or a change in sentencing law, the government explained, did not fall under any of the three specific categories of "extraordinary and compelling reasons" set out in the application note to § 1B1.13.  And, critically, Application Note 1(D)'s catch-all provision could not be

---

[2] At the time of sentencing, prior to *United States v. Booker*, 543 U.S. 220 (2005), the imposition of a Guidelines sentence was mandatory.

invoked, according to the government, because that provision applies only when the BOP, and not a court, finds "other reasons" that qualify.  *See* U.S.S.G. § 1B1.13 cmt. n.1(D).

The district court disagreed.  Guideline § 1B1.13, the court emphasized, was adopted before the First Step Act was passed, and "assumes that the Bureau of Prisons still has veto power" over requests for compassionate release.  *McCoy*, 2020 WL 2738225, at *4.  But when it enacted the First Step Act, the court reasoned, Congress intended to *remove* the BOP from this gatekeeping role – an intent that would be frustrated if § 1B1.13 and Application Note 1(D) continued to make BOP approval a "prerequisite" to the district court's review of McCoy's sentencing petition.  *Id.*  In light of the "inherent conflict" between § 1B1.13 and the First Step Act, the district court concluded, § 1B1.13 was no longer binding – though it remained informative – and the court retained discretion to "define the contours" of an "extraordinary and compelling" reason under § 3582(c)(1)(A)(i) itself.  *Id.*

The district court went on to find that McCoy had presented "extraordinary and compelling reasons" for a reduction of his sentence on the § 924(c) convictions.  First was the "incredible length of the [32-year] mandatory sentence imposed," which far exceeded that necessary to "achieve the ends of justice."  *Id.* at *5 (citations omitted).  If sentenced today, the court explained, McCoy likely would be subjected to less than half that sentence – a disparity of over 200 months.  The district court also relied on the fact that McCoy was a teenager with no relevant criminal history at the time of his offenses, making the recidivist penalties of "stacked" sentences particularly inappropriate.  Finally, the district court cited McCoy's rehabilitation, shown through his many educational and vocational achievements

11

and his payments of nearly $10,000 towards a $38,209 restitution order shared among seven co-defendants.

As required by § 3582(c)(1)(A), the district court also considered the relevant sentencing factors under § 3553(a) and found that "an individualized application" of those factors supported compassionate release. *Id.* at *3. Accordingly, the district court granted McCoy's motion and reduced his sentence to time served. *Id.* at *6. McCoy was released, subject to supervised release, after serving just over 17 years in prison.

2.

*United States v. Bryant* consolidates three related appeals. In 1993 and 1994, defendants Keith Bryant, Kittrell Decator, and Craig Scott participated in one attempted and two completed bank robberies, none of which resulted in any injuries. Each defendant was convicted of bank-robbery charges and three counts of using a firearm in connection with the robberies in violation of § 924(c). At the time of their offenses, the defendants were between 22 and 24 years old. Decator and Scott had no criminal history, and Bryant had one minor prior conviction for which he served no jail time.

Under the then-current stacking regime, each defendant's three § 924(c) convictions led to a mandatory minimum sentence of 45 years.[3] Those mandatory minimums were the

---

[3] At the time the *Bryant* defendants were sentenced, the enhanced minimum sentence for "second or subsequent" § 924(c) convictions was 20 years, rather than the current 25. So each defendant was subject to a first mandatory minimum sentence of five years, upon which was stacked two additional 20-year sentences, for a total of 45 years. *United States v. Bryant*, Crim. No. 95-202-CCB-3, 2020 WL 2085471, at *3 & n.4 (D. Md. Apr. 30, 2020).

lion's share of the defendants' sentences:   Combined with sentences for the robbery conviction, they added up to total terms of imprisonment between 52 and 53 years.   The district court expressed its concern about the severity of the sentences produced by the stacked § 924(c) charges but explained that it had no discretion in the matter.

In late 2019 and early 2020, the defendants moved for compassionate release, first with the BOP and then by filing court motions on their own behalf under the newly amended § 3582(c)(1)(A).   By that time, each defendant had served approximately 25 years in prison.   As "extraordinary and compelling reasons" to support their motions, the defendants focused primarily on the length of their sentences, imposed under an understanding of § 924(c) since corrected by § 403 of the First Step Act and substantially longer than the sentences they would receive if prosecuted today.   They also relied on their exemplary prison records and other evidence of rehabilitation.

In three opinions issued in April and May of 2020, the district court granted the defendants' motions and reduced their sentences to time served.   *United States v. Decator*, 452 F. Supp. 3d 320, 326 (D. Md. 2020); *United States v. Bryant*, Crim. No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020); *United States v. Scott*, Crim. No. 95-202-CCB-2, 2020 WL 2467425, at *5 (D. Md. May 13, 2020).[4]  First, the district court rejected the same argument the government had advanced in *McCoy*:  that under Guideline § 1B1.13's catch-all provision, only the BOP, and not a court, may determine that an

---

[4] Because the district court's legal reasoning is substantially similar in all three opinions, for ease of reference, the remainder of this opinion cites to the decision in *Bryant*, the lead case on appeal.

unusually long sentence is an "extraordinary and compelling" reason for relief.   Like *McCoy*, the court found that "the catch-all provision's limitation of other extraordinary and compelling reasons to those defined by the BOP is . . . inconsistent with the First Step Act," which eliminated the BOP's gatekeeping role.  *Bryant*, 2020 WL 2085471, at *2 (internal quotation marks omitted).   Given that conflict, the court concluded, while § 1B1.13 "remain[s] helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are extraordinary and compelling reasons to reduce a sentence."  *Id.* (internal quotation marks omitted).

The court went on to find, consistent with the reasoning of "[m]ultiple district courts," that the First Step Act's change to sentencing law under § 924(c) – which would have shortened each defendants' sentence by a full 30 years – could be considered under the "extraordinary and compelling" standard.  *See id.* at *3 (citing cases).  The court was not persuaded by the government's argument that because the First Step Act's changes to § 924(c) are not retroactive, they also cannot be the basis for compassionate release under § 3582(c)(1)(A)(i).   "[I]t is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve *some* defendants of those sentences on a case-by-case basis."  *Id.* (internal quotation marks omitted).

The district court then evaluated the defendants' individual circumstances.  With respect to each, the court took into account the defendant's youth and minimal criminal history at the time of his offenses; his post-sentencing conduct and rehabilitation; and the fact that continued incarceration would be disproportionate to both "the seriousness of the

offense and to what Congress now deems appropriate for this kind of conduct." *Id.* at *5. Indeed, the court noted with respect to all three defendants that their sentences were "roughly twice as long as federal sentences imposed today for murder." *Id.* Given all those factors, the court concluded, relief was warranted under § 3582(c)(1)(A). The court therefore granted the defendants' motions and reduced their sentences to time served, and the defendants have since been released on supervision and subject to additional conditions.[5]

The government timely appealed the district court judgments in *McCoy* and *Bryant*, and we consolidated the cases for purposes of this appeal.

## II.

On appeal, the government presents two primary arguments, echoing its positions before the district courts. First, the government contends that treating a disproportionately long sentence as an "extraordinary and compelling" reason for a potential sentence reduction is not "consistent with applicable policy statements issued by the Sentencing

---

[5] The government filed a motion to stay all three defendants' releases, but only after Decator and Bryant already had been released from custody, and after Scott's scheduled release was imminent. *See* Mot. to Stay Orders Pending Appeal ¶ 5 n.1, *Bryant*, 1:95-cr-00202-CCB (D. Md. May 13, 2020), ECF No. 390; Mem. at 3, *Bryant*, 1:95-cr-00202-CCB (D. Md. July 9, 2020), ECF No. 413. The district court denied the motion after Scott had been released, rejecting the government's argument that the defendants were flight risks absent supporting evidence and after the court had already considered suitability of release for each defendant individually. Mem. at 5, *Bryant*, 1:95-cr-00202-CCB. The district court added that the government's request was especially unwarranted where the government was seeking to return the defendants to custody "in the midst of a global pandemic," and before the government had finalized its decision even to pursue appeals. *Id.* at 3, 5.

Commission," as required by § 3582(c)(1)(A).  The relevant policy statement, according to the government, is Guideline § 1B1.13, and under that statement, a reason may qualify as "extraordinary and compelling" under Application Note 1(D)'s catch-all category only with the approval of the BOP, which is absent here.  And second, the government argues, even if consideration of the defendants' § 924(c) sentences were not precluded by § 1B1.13, the First Step Act's elimination of sentence-stacking still could not constitute an "extraordinary and compelling reason" for compassionate release, mostly because Congress chose not to apply that change retroactively.

These arguments raise questions of statutory interpretation, bearing on the authority of the district courts to grant relief.  Accordingly, our review is de novo.  *See United States v. Wirsing*, 943 F.3d 175, 182 (4th Cir. 2019) (construing First Step Act provision); *cf. United States v. Muldrow*, 844 F.3d 434, 437 (4th Cir. 2016) ("We review a district court's decision to reduce a sentence under § 3582(c)(2) for abuse of discretion and its ruling as to the scope of its legal authority under § 3582(c)(2) de novo.") (citation omitted).  For the reasons given below, we disagree with the government's position.

### A.

Under § 3582(c)(1)(A), a district court may reduce a sentence if it finds that a reduction is both warranted by "extraordinary and compelling reasons" and also "consistent with applicable policy statements issued by the Sentencing Commission."   The government's first argument focuses on the "consistency" requirement.  According to the government, the Sentencing Commission, charged with "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction," 28 U.S.C.

16

§ 994(t), did so in Guideline § 1B1.13.   That statement limits such reasons to three prescribed categories – Application Notes 1(A) through (C), covering a defendant's health, age, and family circumstances – and a catch-all category, Application Note 1(D), allowing the BOP and only the BOP to identify "other reasons" that qualify.   *See* U.S.S.G. § 1B1.13 cmt. n.1.   Because the BOP has not determined under Application Note 1(D) that there are "other reasons" in these cases, the government concludes, the district courts are precluded from finding the existence of such reasons "consistent with the applicable policy statement."

The defendants, of course, disagree.   They argue that there is no inconsistency here because Guideline § 1B1.13 – and specifically Application Note 1(D) – conflicts with the later-enacted First Step Act and thus no longer binds the courts.   According to the defendants, the phrase in Application Note 1(D) requiring BOP approval before "other reasons" may be treated as "extraordinary and compelling" is a vestige of the pre-First Step Act statutory structure, under which only the BOP could move for compassionate release. Now that the First Step Act has removed the BOP, quite deliberately, from its gatekeeping role, the BOP's authority to determine the existence of "other reasons" under Application Note 1(D) is irreconcilable with the amended § 3582(c)(1)(A).   Given that conflict, the defendants finish, the statute prevails, *see Dorsey v. United States*, 567 U.S. 260, 266 (2012) (noting that statutes "trump[]" Guidelines), leaving courts with independent discretion to determine whether "extraordinary and compelling reasons" exist.

The district courts in this case – like many other courts – adopted the defendants' position, holding that Guideline § 1B1.13 conflicts with the First Step Act to the extent it

"entrench[es]" the BOP in its gatekeeping role under Application Note 1(D).  *McCoy*, 2020 WL 2738225, at *4; *Bryant*, 2020 WL 2085471, at *2; *see also, e.g.*, *Wise v. United States*, Crim. No. ELH-18-72, 2020 WL 2614816, at *5–6 (D. Md. May 22, 2020); *United States v. Young*, 458 F. Supp. 3d 838, 844–45 (M.D. Tenn. 2020); *United States v. Cantu*, 423 F. Supp. 3d 345, 351–52 (S.D. Tex. 2019).  But we need not go so far to resolve this case. What § 3582(c)(1)(A) requires is that sentence reductions be consistent with "applicable policy statements."  And here, that consistency requirement simply is not implicated, for the threshold reason that there currently exists no "applicable policy statement[]."

In so holding, we join three federal courts of appeals that recently have considered this question.  *See Zullo*, 976 F.3d at 230; *United States v. Jones*, --- F.3d ----, No. 20-3701, 2020 WL 6817488, at *1–2 (6th Cir. Nov. 20, 2020); *United States v. Gunn*, --- F.3d ----, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020).  First was *United States v. Zullo*, in which the Second Circuit faced the same issue before us now:  "[W]hether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)" to Guideline § 1B1.13.  976 F.3d at 234.  The court concluded that the amended § 3582(c)(1)(A) does authorize courts to make their own independent assessments of "extraordinary and compelling reasons" – not because § 1B1.13 is inconsistent with the First Step Act, but because § 1B1.13 is not an "applicable" policy statement at all.  *Id.* at 235–36.  When a defendant exercises his new right to move for compassionate release on his own behalf, in other words, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement

18

does not constrain the discretion of district courts.  *Id.* at 236; *see also Jones*, --- F.3d at ----, 2020 WL 6817488, at *7–9 (following *Zullo*); *Gunn*, --- F.3d at ----, 2020 WL 6813995, at *2 (same).

We agree with the decisions of these courts of appeals, which reflect a growing consensus in the district courts. *See, e.g.*, *United States v. Jones*, --- F. Supp. 3d ----, No. 94-cr-20079-EJD-1, 2020 WL 5359636, at *4–5 (N.D. Cal. Aug. 27, 2020) (describing "growing consensus" in district courts); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397–99 (E.D. Pa. 2020); *United States v. Redd*, 444 F. Supp. 3d 717, 724–25 (E.D. Va. 2020); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019).  The only policy statement that possibly could be "applicable" to the defendants' motions is the one upon which the government relies, Guideline § 1B1.13.  That policy statement was adopted before the First Step Act, and the Sentencing Commission has not updated it to account for the fact that the Act now allows defendants to file their own motions for compassionate release.[6]  So it is not surprising that § 1B1.13's "very first sentence . . . constrains the entire policy statement to motions filed solely by the BOP," *Rodriguez*, 451 F. Supp. 3d at 397, and not by defendants themselves:  "Upon motion of *the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."

---

[6] The Sentencing Commission currently lacks the quorum required to amend the Sentencing Guidelines.  U.S. Sentencing Comm'n, *Annual Report* 2–3 (2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.  Thus, as many courts have recognized, the Commission has been unable to revise the Guidelines in response to the First Step Act, and no amendment or new policy statement appears forthcoming.  *See, e.g.*, *Zullo*, 976 F.3d at 234.

U.S.S.G. § 1B1.13 (emphasis added).  The point is confirmed by Application Note 4 to § 1B1.13, reiterating that "[a] reduction *under this policy statement* may be granted only upon motion by the Director of the Bureau of Prisons."  *Id.* cmt. n.4 (emphasis added).  Like the Second Circuit, we read this language as "defining the motions to which the policy statement applies":  A sentence reduction brought about by motion of a defendant, rather than the BOP, is not a reduction "under this policy statement."  *See Zullo*, 976 F.3d at 236.  By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A).  *See Gunn*, --- F.3d at ----, 2020 WL 6813995, at *2 ("Section 1B1.13 addresses motions and determinations of the Director [of the BOP], not motions by prisoners.").[7]

Notwithstanding this straightforward reading, the government maintains that § 1B1.13 is indeed "applicable" to defendants' motions for compassionate release.  According to the government, the change worked by the First Step Act – allowing a defendant, and not only the BOP, to move for compassionate release – is minor and purely procedural.  If we just do some quick judicial surgery on § 1B1.13, the government suggests, editing out the language described above, then we may assume that what remains – including Application Note 1(D)'s catch-all category dependent on BOP approval –

---

[7] That does not leave Guideline § 1B1.13 without practical import.  The existing policy statement continues to govern BOP-filed motions for compassionate release.  *See Zullo*, 976 F.3d at 235–36; *Jones*, --- F.3d at ----, 2020 WL 6817488, at *8 (quoting *Zullo*).  And as the district courts held here,  it remains helpful guidance even when motions are filed by defendants.  *See McCoy*, 2020 WL 2738225, at *5; *Bryant*, 2020 WL 2085471, at *2; *see also, e.g, Gunn*, --- F.3d at ----, 2020 WL 6813995, at *2; *Rodriguez*, 451 F. Supp. 3d at 400; *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019).

applies to defendant-filed as well as BOP-filed motions.  But that badly understates the importance of the First Step Act's compassionate-release amendment, which "significantly altered the landscape of compassionate-release motions" in a way that the "policy statement never had a chance to address." *Rodriguez*, 451 F. Supp. 3d at 398.

When the Sentencing Commission adopted § 1B1.13 in 2006, a motion could reach a reviewing court only by way of the BOP.  Recognizing that it could not definitively predict every "extraordinary and compelling" reason that might arise, the Commission included a catch-all provision, subject, again, to BOP approval – which meant at the time that "*every motion* to reach [a] court would have an opportunity to be assessed under the flexible catchall provision." *Rodriguez*, 451 F. Supp. 3d at 398–99.  Application Note 1(D)'s focus on a BOP determination made sense in 2006, in other words, against a backdrop in which the BOP was the gatekeeper for all compassionate release motions.  But we cannot simply assume, as the government urges, that the Commission would make the same decision now, after the First Step Act pointedly has *removed* the BOP from that gatekeeper role.  *See Jones*, --- F.3d at ----, 2020 WL 6817488, at *8.

Indeed, a catch-all provision limited to BOP-approved "other reasons" could raise some specific issues under § 3582(c)(1)(A)'s new exhaustion provision.  As amended by the First Step Act, § 3582(c)(1)(A) requires a defendant to exhaust his remedies with his warden and the BOP before filing his own motion for compassionate release.  But Congress, aware of the BOP's history of extensive delays, also provided a "30-day lapse" alternative, under which a defendant may proceed directly to district court if his request is not acted on within that time.  *See* First Step Act § 603(b)(1), 132 Stat. at 5239.  As a result,

a defendant now may file a compassionate-release motion in court before the BOP even has considered whether he qualifies for relief under the catch-all provision.  If the BOP nevertheless retains its determinative role under Application Note 1(D), then such defendants would be required either to forgo the 30-day lapse provision and wait for a BOP determination, or to forgo reliance on the catch-all provision in exchange for a timely decision by the district court.  *See Rodriguez*, 451 F. Supp. 3d at 399 ("It would be a strange remedy indeed if Congress provided that prisoners whose wardens failed to respond . . . could only take advantage of the thirty-day lapse provision by accepting a pared-down standard of review that omitted the flexible catchall standard."); *see also Zullo*, 976 F.3d at 236.

Our point, to be clear, is not that Guideline § 1B1.13 and Application Note 1(D) necessarily conflict with the First Step Act.  As we said at the start, we need not decide whether the Sentencing Commission, under the First Step Act, *could* apply a BOP-approved catch-all category to motions filed by defendants, because the Sentencing Commission has yet to do so.  But the Act's changes to the compassionate-release system are substantial enough, and the questions raised complex enough, that we cannot do as the government asks and simply assume that Application Note 1(D) will survive unchanged in a post-First Step Act world.  As of now, there is no Sentencing Commission policy statement "applicable" to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist "extraordinary and compelling reasons" for a sentence reduction.

Although the government's primary argument is that § 1B1.13 is "applicable" to defendant-filed motions under the First Step Act, it appears to have a fallback argument, as well:  If there are *not* "applicable policy statements issued by the Sentencing Commission" to govern such motions, it suggests, then maybe courts cannot rule on those motions at all, because only the Sentencing Commission, and not courts, may decide what counts as an "extraordinary and compelling" reason.  We again disagree.  "Nothing in § 3582(c)(1)(A)(i) requires courts to sit on their hands" if there is a gap in Commission policy. *Rodriguez*, 451 F. Supp. 3d at 400.

The statutory text resolves this issue.  On the government's reading, the consistency provision operates as an affirmative command that every sentence reduction be consistent with "applicable policy *statements*," plural, "issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A) (emphasis added).  That makes no sense; we can think of no reason, and the government has provided none, why Congress would insist that each sentence reduction be consistent with at least two policy statements.  Rather, Congress's use of the plural "statements" makes clear what is required:  A sentence reduction must conform to any and all policy statements that apply.  But where the Commission fails to act, then courts make their own independent determinations of what constitutes an "extraordinary and compelling reason[]" under § 3582(c)(1)(A), as consistent with the statutory language, which "directly instructs *courts* to 'find that' extraordinary circumstances exist." *Rodriguez*, 451 F. Supp. 3d at 400 (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also Gunn*, --- F.3d at ----, 2020 WL 6813995, at *2 ("Any decision is 'consistent with' a nonexistent policy statement.  'Consistent with' differs from 'authorized by.'").

23

The Sentencing Commission, of course, continues to play a central role in defining "extraordinary and compelling reasons," as directed by Congress. *See* 28 U.S.C. § 944(t) (instructing the Commission, in promulgating general policy statements regarding § 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling reasons" for sentence reductions); *see also id.* § 994(a)(2)(C). As the district court emphasized in *McCoy*, the Sentencing Commission "maintains the statutory authority to update its guidance for district courts . . . after passage of the First Step Act." 2020 WL 2738225, at *5. When it does, courts will be required to ensure that any sentence reductions granted on defendants' motions are consistent with that guidance, assuming, of course, that such guidance violates no statutory or constitutional provision. *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010) (applying neighboring section § 3582(c)(2) and holding that a court may not reduce a sentence without "first determin[ing] that a reduction is consistent" with the applicable policy statement). But we cannot endorse the government's suggestion that until then, there can and should be no court action on defendant-filed motions under § 3582(c)(1)(A) – a result that would frustrate entirely Congress's expansion of the compassionate-release system in the First Step Act. *See Rodriguez*, 451 F. Supp. 3d at 400 & n.11.

In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no "applicable" policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Zullo*, 976 F.3d at 230.

24

**B.**

The government's second argument is that even if § 3582(c)(1)(A)'s consistency requirement did not limit the district courts' discretion, those courts nevertheless erred in treating as "extraordinary and compelling reasons" the length of the defendants' sentences and the fact that those sentences would be dramatically shorter today, given the First Step Act's elimination of sentence-stacking under § 924(c).  Again, we disagree.

As the court observed in *Bryant*, multiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A).  *See Bryant*, 2020 WL 2085471, at *3 (citing cases); *see also, e.g.*, *Jones*, --- F. Supp. 3d at ----, 2020 WL 5359636, at *7; *United States v. Haynes*, 456 F. Supp. 3d 496, 514–16 (E.D.N.Y. 2020); *Redd*, 444 F. Supp. 3d at 723–24; *Young*, 458 F. Supp. 3d at 848; *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020).  We find their reasoning persuasive.  The First Step Act's clarification of § 924(c) resulted in not just any sentencing change, but an exceptionally dramatic one.  The *Bryant* defendants are a good example:  Sentenced before the First Step Act, each received a 45-year mandatory minimum sentence under § 924(c), including two consecutive 20-year sentences for "second and subsequent" convictions.  Today, with sentence-stacking eliminated, each would have been sentenced under § 924(c) not to 45 years, but to 15 – making their sentences a full 30 years longer "than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct."  *Redd*, 444 F. Supp. 3d at 723.

The district courts here – like other district courts – appropriately considered two distinct features of the defendants' § 924(c) sentences in applying the "extraordinary and compelling reasons" standard.  First is the sheer and unusual length of the sentences.  As the district court noted in *Bryant*, the defendants' sentences in that case were about twice as long as federal sentences imposed today for murder.  2020 WL 2085471, at *5 & n.8 (noting that the national average for a federal murder sentence in fiscal year 2018 was 291 months); *see also Redd*, 444 F. Supp. 3d at 723 & n.9 (finding stacked § 924(c) sentence to be decades longer than sentences imposed for federal offenses like murder, kidnapping and manslaughter).  And the district court in *McCoy* recalled that when it initially sentenced the defendant, it expressed concern about the length of the mandatory 35-year sentence it was required to impose, driven almost entirely by a 32-year minimum sentence under § 924(c).  *See* 2020 WL 2738225, at *5.

In combination with the length of the defendants' sentences, the district court also considered the "gross disparity" between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct.  *Redd*, 444 F. Supp. 3d at 723; *see McCoy*, 2020 WL 2738225, at *6 (explaining 200-month disparity between McCoy's § 924(c) sentence and the sentence he would receive today); *Bryant*, 2020 WL 2085471, at *3 (discussing 30-year disparity).  "That disparity is primarily the result of Congress' conclusion that sentences like [these] are unfair and unnecessary, in effect, a legislative rejection of the need to impose sentences under § 924(c), as originally enacted, as well as a legislative declaration of what level of punishment is adequate."  *Redd*, 444 F. Supp. 3d at 723 (footnote omitted).  We think courts legitimately may consider, under the

"extraordinary and compelling reasons" inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair.  *See id.* at 723–24; *Jones*, --- F. Supp. 3d at ----, 2020 WL 5359636, at *7 (granting compassionate release to § 924(c) defendant who "long ago completed a sentence which Congress . . . consider[s] sufficient and proportionate to his misconduct") (internal quotation marks omitted).[8]

In sum, we find that the district courts permissibly treated as "extraordinary and compelling reasons" for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act.  We emphasize, as did the district courts, that these judgments were the product of individualized assessments of each defendant's sentence.  And we note that in granting compassionate release, the district courts relied not only on the defendants' § 924(c) sentences but on full consideration of the defendants' individual circumstances.  In particular, in determining that release was appropriate for all of the defendants, the courts focused on the defendants' relative youth – from 19 to 24 years old – at the time of their offenses, a factor that many courts have found relevant under § 3582(c)(1)(A)(i).  *See, e.g., Zullo*, 976 F.3d at 238; *Jones*, --- F. Supp. 3d at ----, 2020

---

[8] As many courts have noted, *see Zullo*, 976 F.3d at 238; *Maumau*, 2020 WL 806121, at *6, consideration of the defendants' § 924(c) sentences is supported by the legislative history of the original compassionate release statute, enacted as part of the Comprehensive Crime Control Act of 1984.  *See* Pub. L. 98-473, 98 Stat. 1837.  The accompanying Senate Report suggested that the length of a sentence is a relevant factor, indicating that relief would be appropriate when "extraordinary and compelling circumstances justify a reduction of an unusually long sentence."  S. Rep. No. 98-225, at 55 (1984).

WL 5359636, at *7.  Combined with the substantial sentences the defendants already had served at the time of their motions – from 17 to 25 years – that meant that each defendant had spent close to or more than half his life in prison.  *Cf. Jones*, --- F. Supp. 3d at ----, 2020 WL 5359636, at *7 ("[B]ecause Mr. Jones was only 22 years old when he began serving his sentence, he has spent more than half his life in prison.").  And during that time, as the district courts explained, each defendant had established excellent institutional records and taken substantial steps toward rehabilitation.[9]

The government's primary argument in response is that by taking into account the First Step Act's elimination of § 924(c) sentence-stacking, the district courts impermissibly gave that provision retroactive effect, contrary to Congress's direction.  *See Jordan*, 952 F.3d at 174 (holding that the First Step Act's changes to § 924(c) do not apply retroactively to previously imposed sentences).  We disagree.  The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i).  As multiple district courts have explained, there is a significant difference between automatic vacatur and resentencing of an entire class of sentences – with its "avalanche of applications and inevitable re-

---

[9] In 28 U.S.C. § 994(t), which generally directs the Sentencing Commission to provide guidance on "extraordinary and compelling reasons," Congress specifies that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  But there is no indication that successful rehabilitation efforts may not be considered as one among other factors under § 3582(c)(1)(A)(i), and the government does not argue otherwise here.

sentencings," *Haynes*, 456 F. Supp. 3d at 516 – and allowing for the provision of individual relief in the most grievous cases.  *See*, *e.g.*, *Redd*, 444 F. Supp. 3d at 720–21; *Maumau*, 2020 WL 806121, at *7; *Jones*, --- F. Supp. 3d at ----, 2020 WL 5359636, at *8 (citing additional cases).  Indeed, the very purpose of § 3582(c)(1)(A) is to provide a "safety valve" that allows for sentence reductions when there is *not* a specific statute that already affords relief but "extraordinary and compelling reasons" nevertheless justify a reduction. *Jones*, --- F. Supp. 3d at ----, 2020 WL 5359636, at *8 (citation omitted).  Like the district court in *Bryant*, we see nothing inconsistent about Congress's paired First Step Act judgments:  that "not *all* defendants convicted under § 924(c) should receive new sentences," but that the courts should be empowered to "relieve *some* defendants of those sentences on a case-by-case basis."  2020 WL 2085471, at *3 (quoting *Maumau*, 2020 WL 806121, at *7).

The government points to § 404(b) of the First Step Act, which expressly permits retroactive sentence reductions for certain crack cocaine offenses at the discretion of district court judges, *see* First Step Act § 404(b), 132 Stat. at 5222, as evidence that Congress did not intend to allow for case-by-case consideration of § 403's elimination of sentence-stacking under § 3582(c)(1)(A)(i).  But those are significantly different regimes, and the comparison is inapt.  Sentence reductions under § 404(b) may ultimately be discretionary, but the starting point is that the entire class of defendants is eligible, and

relief is common.[10]  Under § 3582(c)(1)(A)(i), by contrast, only those defendants who can meet the heightened standard of "extraordinary and compelling reasons" may obtain relief. Again, it was not unreasonable for Congress to decide that it did not want sentence reductions based on § 403 of the First Step Act to be as widely available as relief under § 404 – and thus to limit those reductions to truly extraordinary and compelling cases.

Nor, contrary to the government's suggestion, is 18 U.S.C. § 3582(c)(2) a compelling point of comparison.  Section 3582(c)(2) grants courts discretion to reduce terms of imprisonment that are based on sentencing ranges subsequently lowered by the Sentencing Commission, and we have held that nonretroactive changes to statutory minimums cannot be grounds for such reductions.  *See United States v. Black*, 737 F.3d 280, 285–86 (4th Cir. 2013).  But § 3582(c)(2) and § 3582(c)(1)(A)(i) are separate and distinct provisions, one of which – subsection (c)(2) – makes sentencing reductions available in a precisely delineated class of cases, and one of which – subsection (c)(1)(A)(i) – uses the more open-ended "extraordinary and compelling reasons" standard to capture the truly exceptional cases that fall within no other statutory category.  *Black* does not purport to address this separate class of cases, and we have no reason to import it here.  For

---

[10]  According to the Sentencing Commission, 2,387 defendants were granted sentence reductions pursuant to § 404 of the First Step Act in 2019 alone.  U.S. Sentencing Comm'n, *First Step Act of 2018 Resentencing Provisions Retroactivity Data Report* 4 tbl. 1 (Jan. 2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/ retroactivity-analyses/first-step-act/20200203-First-Step-Act-Retro.pdf.   During the same time period, 15 individuals were granted compassionate release for "other reasons" under Application Note 1(D).   U.S. Sentencing Comm'n, *The First Step Act of 2018:  One Year of Implementation* 49 (Aug. 2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200831_First-Step-Report.pdf.

the same reason, and contrary to the government's argument, allowing courts to consider changes in sentencing law as part of the "extraordinary and compelling reasons" inquiry does not render § 3582(c)(2) superfluous; the two provisions operate in separate categories of cases, with § 3582(c)(1)(A)(i) setting an exceptionally high standard for relief.

Finally, the government argues that by treating the First Step Act's change to sentencing law as an "extraordinary and compelling" reason for a sentence reduction, the district courts effectively declared the defendants' prior sentences unjust, usurping clemency powers reserved to the executive branch. But as the court explained in *Bryant*, the defendants here did not petition for clemency; they moved for compassionate release under a duly enacted congressional statute, which, in turn, authorizes the judicial branch to grant such motions. 2020 WL 2085471, at *3 n.5. Similarly, while the finality of sentences is an important principle, § 3582(c)(1)(A) "represents Congress's judgment that the generic interest in finality must give way in certain individual cases," *see Jones*, --- F. Supp. 3d at ----, 2020 WL 5359636, at *8, and authorizes judges to implement that judgment. To the extent the government suggests that the district court decisions here violate the constitutional separation of powers, we do not agree.

*   *   *

We return to the Second Circuit's description of the First Step Act and its amendment of § 3582(c)(1)(A):   an "incremental" change that does not mandate more lenient sentences across the board but instead gives new discretion to the courts to consider leniency. *Zullo*, 976 F.3d at 230. The district courts in these cases appropriately exercised the discretion conferred by Congress and cabined by the statutory requirements of

31

§ 3582(c)(1)(A).  We see no error in their reliance on the length of the defendants' sentences, and the dramatic degree to which they exceed what Congress now deems appropriate, in finding "extraordinary and compelling reasons" for potential sentence reductions.  The courts took seriously the requirement that they conduct individualized inquiries, basing relief not only on the First Step Act's change to sentencing law under § 924(c) but also on such factors as the defendants' relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served.  Those individualized determinations were neither inconsistent with any "applicable" Sentencing Commission guidance nor tantamount to wholesale retroactive application of the First Step Act's amendments to § 924(c). Accordingly, we affirm the judgments of the district courts.

## III.

The judgments of the district courts in the four consolidated cases on appeal are affirmed.

*AFFIRMED*